IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. HOWARD EISENBERG,                    *

    Plaintiff,                    *

      v.                    *          Civil Action No.: RDB 09-3393

OCWEN LOAN SERVICING, LLC,                    *

    Defendant.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM ORDER

Defendant Ocwen Loan Servicing, LLC ("Ocwen") moves for summary judgment on Plaintiff Dr. Howard Eisenberg's claim for breach of contract. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant Ocwen's Motion for Summary Judgment (ECF No. 26) is GRANTED.

## BACKGROUND

This Court reviews the facts relating to this claim in the light most favorable to the petitioner. *See, e.g., Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Defendant Ocwen contends that it is entitled to summary judgment on Plaintiff Eisenberg's sole remaining claim for breach of contract, which arises out of Ocwen's alleged breach of a loan modification agreement. Ocwen contends that the parties never entered into a loan modification agreement because Eisenberg made substantive changes to the agreement that resulted in a counteroffer Ocwen never accepted, thus no contract was ever formed. Ocwen also asserts that it is entitled to judgment as a matter of law that Eisenberg failed to prove damages

arising from Ocwen's alleged breach because the late fees and penalties Ocwen charged were unrelated to the modification of Eisenberg's loan.

Eisenberg had an adjustable-rate home mortgage secured by his residence in Baltimore County, Maryland, that was serviced by Ocwen. MSJ Ex. A at 14. In February 2008, Eisenberg fell approximately two months behind on his mortgage as a result of missing payments and submitting bad checks. *Id*. 15. After contacting Ocwen's customer service department, Eisenberg was offered a loan modification that would convert his adjustable rate loan to a fixed rate loan. *Id*. In February 2008, to formalize this agreement, Ocwen sent Eisenberg a Forbearance Stipulation and Loan Modification Agreement ("the Agreement") to be signed by Eisenberg and his wife.

After reviewing the Agreement, Eisenberg took issue with two of its terms: First, he did not agree that he had been late in his payments. MSJ Ex. B at 24-27. Second, he did not want to be responsible for certain fees associated with the loan modification. *Id*. After calling Ocwen to discuss these terms, Eisenberg was told that he could cross out the reference to the late payments. MSJ Ex. C. Eisenberg never mentioned that he also wanted to eliminate the paragraph in the Agreement obligating him to pay certain fees associated with the modification. MSJ Ex. B at 26-27, 48. Nonetheless, Eisenberg crossed out both of these provisions. MSJ Ex. B at 26-27. Notably, at his deposition Eisenberg stated that he understood that Ocwen was not obligated to accept the Agreement if he changed its terms without Ocwen's consent. *Id*. at 49.

Eisenberg contends that on February 21, 2008, he faxed the Agreement back to Ocwen and sent his required down payment by overnight mail. *Id*. at 28-29. Eisenberg has not, however, produced a fax verification page nor a complete copy of the Agreement he asserts he

faxed to Ocwen. *Id*. at 30-31; Ex. D. The only copy of the Agreement Eisenberg has produced is missing its second page and has the fee-related paragraph crossed out. MSJ Ex. E at 4. Furthermore, there is no dispute that Eisenberg faxed this copy of the Agreement to an incorrect number. *Id*. Ex. E. As a result, because Ocwen never received a complete, signed copy of the Agreement with all the material terms intact, Eisenberg's check was applied to his mortgage balance. MSJ Ex. A at 36-37.

Over the following months, Eisenberg contacted Ocwen on numerous occasions about the status of his loan. Ocwen repeatedly told him that they did not have a complete copy of the Agreement and that he needed to submit it. *Id*. Ex. B at 50-51. Ocwen never told Eisenberg that the Agreement received final approval or had become effective. *Id*. at 52; Ex. D at No. 1. During this time, Ocwen customer service told Eisenberg to make his mortgage payments as if the modification was in effect. *Id*. Ex. A at 41-42. Ocwen did not charge Eisenberg any fees arising from his payment of the modified amount but instead only assessed penalties that resulted from Eisenberg's failure to submit payments altogether or submission of checks that bounced. *Id*. at 63. In December 2008, Ocwen sent Eisenberg a second copy of the loan modification agreement. *Id*. 56-57. He never returned this agreement. *Id*. As of the time Eisenberg filed his original complaint, Ocwen had still not received a complete, signed copy of the Agreement that did not have its material terms stricken. *Id*. Ex. A at 65-66.

On or about November 18, 2009, Eisenberg filed this action in the Circuit Court for Baltimore County. On or about December 18, 2009, Ocwen timely removed the case to this Court. On December 23, 2009, Ocwen filed an amended complaint alleging breach of contract (Count I), seeking punitive damages (Count II) and seeking damages for violation of the

Maryland Mortgage Fraud Protection Act (Count III).  ECF No. 7.  On January 8, 2010, Ocwen

filed an answer as to the breach of contract claim and moved to dismiss Counts II and III seeking

damages.  ECF Nos. 9 & 10.  On April 8, 2010, following a motions hearing, this Court granted

Ocwen's motion to dismiss Counts II and III.  ECF No. 22.  Accordingly, the sole count

remaining in this case is for breach of the loan modification agreement.  On August 2, 2010,

Ocwen moved for summary judgment on this count.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

material fact is one that "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Id.*  In considering a motion for summary judgment, a judge's function is limited to

determining whether sufficient evidence exists on a claimed factual dispute to warrant

submission of the matter to a jury for resolution at trial.  *Id*. at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences

in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).  After the moving party has established the absence of a

genuine issue of material fact, the nonmoving party must present evidence in the record

demonstrating an issue of fact to be resolved at trial.  *Pension Ben. Guar. Corp. v. Beverley*, 404

F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).

<u>ANALYSIS</u>

**I.     Validity of the Agreement**

Ocwen contends that no contract was ever formed because Eisenberg did not return a complete copy of the loan modification agreement, and because the partial agreement Eisenberg returned was materially altered.  As the United States Court of Appeals for the Fourth Circuit has held, to prove the existence of a binding contract, a plaintiff must show "an offer by one party and an unconditional acceptance of that precise offer by the other." *Barclay White Skanska, Inc. v. Battelle Mem. Inst.*, 262 Fed. Appx. 556, 561 (4th Cir. 2008).  Thus, "[i]f a purported acceptance varies from the terms of the offer, then it does not operate as an acceptance, but

rather as a rejection of the offer and a counteroffer." *Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 543 (4th Cir. 1987).

In this case, Eisenberg crossed out a material term of the Agreement — the provision obligating him to pay certain fees — without Ocwen's approval. MSJ Ex. B at 26-27, 48. Once Eisenberg changed the material terms, his copy of the signed Agreement became a counteroffer. Furthermore, Eisenberg knew that Ocwen had a right to reject this counteroffer. *Id*. at 49, 52, 161. It is undisputed that no one at Ocwen ever told Eisenberg that the Agreement had been accepted. *Id*. In fact, Ocwen's corporate designee has stated on the record that Ocwen would not have accepted the Agreement with the fee provision stricken. *Id*. Ex. A at 65. Accordingly, because Eisenberg and Ocwen never entered into a loan modification agreement, Ocwen cannot be found to have breached the Agreement.

In response to the pending Motion for Summary Judgment, Eisenberg argues in the alternative that Ocwen entered into a new, implied-in-law contract based upon his interactions with Ocwen. Eisenberg argues that this implied contract resulted from Ocwen's acceptance of any monthly payments and his belief that his mortgage loan had been modified. It is well-established under Maryland law that a breach of contract claim and a breach of an implied-in-law claim are two distinct causes of action. *See, e.g.*, *Slick v. Reinecker*, 154 Md. App. 312, 318 (2003) ("what is confusingly called a contract implied at law is actually no contract at all."). Accordingly, Eisenberg's assertion of an implied contract is an attempt to amend his complaint for a second time without this Court's consent. Pursuant to this Court's Scheduling Order, the deadline for Eisenberg to further amend his complaint was February 22, 2010. *See* ECF No. 11. Thus, this new claim is untimely. Even if it were timely, it is meritless because any implied

agreement would have to be in writing pursuant to the Statute of Frauds.  *See Campbell v. IndyMac Bank, FSB*, 2010 WL 419387 (D. Md. Jan. 29, 2010) (holding that an action may not be brought on any agreement not to be performed within one year unless the contract is in writing and signed by the party to be charged or another person lawfully authorized by that party).

## II.     Eisenberg's Damages Claims

Eisenberg seeks to recover as a part of his damages claim the difference between his past and future mortgage payments under the terms of his original mortgage and the lower past and future payments he would have made under the terms of the new Agreement.  MSJ Ex. G at Answer 3(A)-(B).  Because this Court has determined that Eisenberg and Ocwen never entered into a new mortgage contract, however, Eisenberg is not entitled to damages arising out of the new loan modification agreement.

Even if there were factual issues as to the creation of a contract, Ocwen is entitled to summary judgment on any damages claims allegedly arising out of the negative information reported to the credit agencies by Ocwen.  It is undisputed that Eisenberg's credit score was damaged as a result of his being the victim of major identity theft in 2008 when checks that were mailed to him were stolen.  MSJ Ex. B. at 140-42.  Thus, to the extent Eisenberg was denied credit in 2009, he has no way of knowing whether the denials are a result of the damage to his credit created by the identity theft or whether they can be attributed to Ocwen's conduct. Furthermore, Eisenberg's claim for $238,963.84 in damages is wholly speculative.  Even if Eisenberg was denied credit as a result of the negative information Ocwen supplied that affected his credit report, there is no way of reasonably quantifying this damage.  Accordingly, this Court grants summary judgment to Ocwen on Eisenberg's claim for damages.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Ocwen's Motion for Summary Judgment (ECF

No. 26) is GRANTED.

A separate Order follows.

Dated: _____  /s/_____

Richard D. Bennett
United States District Judge